**BOUTIN JONES INC.**
Brian M. Taylor (SBN 214838)
Daniel S. Stouder (SBN 226753)
555 Capitol Mall, Suite 150
Sacramento, CA 95814-4603
Telephone: (916) 321-4444
Facsimile: (916) 441-7597
btaylor@boutinjones.com
dstouder@boutinjones.com

Attorneys for Plaintiff Collicutt Energy, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLICUTT ENERGY SERVICES INC., a Delaware Corporation,<br>　　　　　　　　Plaintiff,<br>vs.<br>TRINITY LOGISTICS, INC., a Delaware Corporation; M & L EXPRESS LLC, a Maryland Limited Liability Company; PLAY BOOK CARRIERS INC., an Illinois Corporation;<br>　　　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **Damage to Goods During Shipping (Carmack Amendment)--Strict Liability**<br>2. **Breach of Contract**<br>3. **Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Collicutt Energy Services, Inc. ("Collicutt" or "Plaintiff"), by its attorneys at Boutin Jones Inc., alleges as follows:

**JURISDICTION AND VENUE**

1. This case is brought under federal law, in particular, under the Carmack Amendment, 49 U.S.C. § 14706 et. seq., a part of the Interstate Commerce Act ("ICA"). This Court has jurisdiction pursuant 28 U.S.C. § 1331. In addition, under 28 U.S.C. § 1367, this Court should exercise supplemental jurisdiction over the state law claims as they are part of the same case or controversy as the claims over which the court has original jurisdiction.

2. Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) because the contracts at issue between Plaintiff and

Defendant Trinity were formed in West Sacramento, Yolo County, California, a city and county within the jurisdiction of the Eastern District of California. In addition, the key communications related to the contracts at issue were sent to/from Plaintiff's employee in West Sacramento, Yolo County, California. Finally, Plaintiff believes there is no other available forum. 28 U.S.C. § 1391(b)(3).

**NATURE OF DISPUTE**

3. Plaintiff is, and at all times relevant herein was a Delaware corporation, that supplies generators and other industrial equipment. Plaintiff has several offices in California, including in West Sacramento, Yolo County, California.

4. Defendant TRINITY LOGISTICS, INC. ("Trinity") is a Delaware corporation that is in the business of transporting or arranging the transport of freight.

5. M & L EXPRESS LLC ("M & L Express") is a Maryland limited liability company that is in the business of transporting freight.

6. PLAY BOOK CARRIERS INC. ("Play Book") is an Illinois corporation that is in the business of transporting freight.

7. At all times mentioned herein, each defendant was the agent and/or employee of each and all of the other defendants, and was acting in the course of such agency and/or employment.

**FACTUAL BACKGROUND**

8. In May of 2021, an employee from Collicutt's West Sacramento office, Melissa Simpson, emailed an employee of Trinity, Mike Anderson, requesting Trinity to transport two large generators with enclosures and related equipment from Wisconsin to California. One generator was for the "Fig & Pico Project," Model 12V4000; the invoice of the generator to Collicutt's client was $473,879 including the enclosure. The other generator was for the "Comsat Project," Model 16V2000; the invoice of the generator to Collicutt's client was $236,199 including the enclosure. The generators were manufactured by MTU American, Inc. ("MTU") and the enclosures by Global Power Components ("Global"). Following the manufacture of the enclosures, Collicutt required the generators, enclosures, and related equipment transported from Global in Milwaukee, Wisconsin to Collicutt's customer's jobsites in California via tractor trailer.

9. Simpson and Anderson had numerous emails and telephone calls regarding the transport of the two generators and related equipment. Simpson, on behalf of Collicutt, provided information about weight and dimensions of the generators and equipment. Anderson, on behalf of Trinity, recommended and decided on the number of trucks/trailers, types of trucks/trailers needed, and an estimate of the cost of transport.

10. These communications preceded two written contracts referred to as "Purchase Orders" ("POs") between Collicutt and Trinity, sent by Simpson from Collicutt's West Sacramento office to Anderson. The POs both provide that Trinity, as the "vendor," will ship the generators and related equipment via "freight" to California.

11. PO Number 43009MS was for the Fig & Pico Project generator and related equipment and provides that Trinity will ship the generator/enclosure via one truck and the DPF/frame via a second truck to the City of Industry, California for the price of $33,750. Trinity accepted the obligation to ship, via freight, the equipment under PO Number 43009MS.

12. PO Number 43168MS was for the Comsat Project generator and provides that Trinity will ship the generator/enclosure, crate of loose parts, and pallet of pipes to Ventura, California for the price of $27,600. Trinity accepted the obligation to ship, via freight, the equipment under PO Number 43168MS.

13. Both POs provide that the laws of the State of California govern.

14. Collicutt did not sign any other agreement with Trinity related to the shipment of the goods at issue here.

15. Unbeknownst to Collicutt, Trinity contracted with Play Book and M & L Express to ship the generators and related equipment. Collicutt only learned about these companies after this dispute arose.

16. Although not known to Plaintiff at the time, Trinity contracted with Play Book and Midwest Carriers, Inc.[1] to ship the Fig & Pico Project generator and related equipment under Bill of Lading Number 6566263 (Play Book) and Bill of Lading Number 6566264 (Midwest Carriers,

---

[1] The equipment shipped by Midwest Carriers, Inc. was not damaged and thus they are not a party to action, although Plaintiff reserves the right to amend in the event facts are learned that support liability against Midwest Carriers, Inc.

3

Complaint
1220401.8

Inc.). Play Book agreed to deliver the generator to the job site in California.

17. Although not known at the time, Trinity contracted with M & L Express to ship the Comsat Project generator and related equipment. M & L Express agreed to deliver the generator to the job site in California.

18. On June 17, 2021, Anderson emailed Simpson in West Sacramento and advised: "I have the truck for the crates with the additional parts secured. The height of the enclosures are creating some challenges… All the trucks that are able to handle this type of load are wanting to load next week due to permits. Is that an option??" Later that day, Anderson in an email to Simpson said that Trinity had "all the loads covered for pick up tomorrow at Global…"

19. On June 17, 2021, Anderson also asked Simpson for the values of the loads as he was "[s]etting up the insurance on these 2 units."

20. On June 18, 2021, Anderson confirmed via email to Simpson that all the trucks were "loaded and rolling."

21. During shipment, both the enclosures as well as the generators inside were severely damaged by hitting overpasses, as the height of the loaded generators on both trailers were too high.

22. The driver from Play Book who was hauling the Fig & Pico generator hit an overpass in Wisconsin and returned the generator to Global in Milwaukee. Global was charged $16,995 to have the necessary crane, labor, and other logistics to remove the damaged generator off the truck. The Fig & Pico Project generator was inspected by MTU. MTU refused to warranty or guarantee the generator to Collicutt's customers without a complete tear down and rebuild of each unit due to the possibility of internal engine damage due to the accident. Collicutt's clients, having purchased new generators, refused to accept the generators if MTU would not warrant them. Ultimately, MTU provided an estimate to tear down and rebuild the generator engine which was more than the cost to purchase a new generator.

23. Global requested Collicutt to remove the Fig & Pico unit from Global's yard. Consequently, Collicutt incurred additional shipping charges in the amount of $8,950 to ship the damaged Fig & Pico unit to a Collicutt facility in Canada. Collicutt charges $1,000 a month for

storage at its facility.

24. The driver from M & L Express who was hauling the Comsat Project generator made it out of Wisconsin before hitting an overpass just over the border in Illinois. The Comsat Project damaged generator was transported to Maggio Truck Center in Rockford, Illinois. As of November 9, 2021, Maggio's claimed $36,000 against Plaintiff in storage fees plus $250 per day. The quoted costs from MTU to rebuild the Comsat Project's generator engine and certify the engine was more than purchase price of a new unit. As of the filing of this Complaint, Maggio's continues to charge storage fees.

25. To meet Collicutt's commitment to its customers, Collicutt purchased replacement equipment. Collicutt paid $365,454 plus expediting fees of $1,611.90 total for the Fig & Pico generator and enclosure, and $178,101 for the Comsat Project generator, tank and enclosure.

26. In addition, Collicutt incurred at least the following additional costs for the Fig & Pico project:
- Freight to Global: $2,450
- Freight to Halbert Brothers crane yard: $40,235
- Damage unit picked up from Global to TJ Potter yard to prepared to ship to Canada: $2,000
- Freight from TJ Potter's yard to Canada: $6,950
- PM time: 76 hrs at $40/hr: $3,040 accrued to date.

27. In addition, Collicutt incurred at least the following additional costs for the Comsat project:
- Oilfield Electric & Motor, the contractor, claimed $14,098 against Collicutt for costs incurred as a result of the accident that prevented the timely delivery and timely completion of the of the Comsat project.
- Maggio's Truck Center: $43,722
- Sprinter truck with ship loose parts and vent pipes: $3,500
- PM time: 25 hrs at $40.00/hr: $1,000 accrued to date.

28. Plaintiff submitted a claim to Trinity for the costs of both generators and enclosures as well as other damages such as shipping, storage, and the various claimed costs from third parties. Trinity, in turn, submitted the claim to its insurer, Markel. After requiring Collicutt to submit substantial paperwork, and after Markel investigated thoroughly, Trinity asserted that it was not acting as a "motor carrier" and therefore is not subject to the Carmack Amendment, which makes all motor carriers "who receive[], deliver[], or provide[] transportation or service" during a

shipment strictly liable to the shipper "for the actual loss or injury to the property," regardless of which carrier had possession of the shipment at the time it was lost or damaged. During the claim process, Trinity's counsel identified Defendants Play Book and M & L Express, and asserted that they alone are responsible for Plaintiff's damages.

## FIRST CLAIM FOR RELIEF

**(Damage to Goods During Transport; Carmack Amendment 49 U.S.C. § 14706 et. seq.; Strict Liability--As to All Defendants)**

29. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 28, above, as though fully set forth herein.

30. The Fig & Pico Project generator/enclosure and the Comsat Project generator/enclosure were delivered to Defendants in good condition. As discussed above, the Fig & Pico Project generator/enclosure and the Comsat Project generator/enclosure were both damaged during transit. Plaintiff alleges it was a shipper, that each of the defendants was acting as a "motor carrier" as defined under federal law, and all are therefore strictly liable under the Carmack Amendment. Plaintiff further alleges that Trinity held itself out as a motor carrier and never stated or indicated before the accidents that it was not a motor carrier or that it was only acting as a broker.

31. The damages caused to both the Fig & Pico Project generator/enclosure and the Comsat Project generator/enclosure, including loss of use, additional shipping, storage, etc., were foreseeable. Anderson from Trinity was aware the day before that the load heights were an issue, yet Trinity nevertheless failed to find trailers that would allow the proper load height. The height of the load was also readily viewable and measurable by the drivers for both M & L Express and Play Book at the time they picked up the equipment.

32. With respect to the damages related to the Fig & Pico Project generator/enclosure, Plaintiff's claims are against Trinity and Play Book.

33. With respect to the damages related to the Comsat Project generator/enclosure, Plaintiff's claims are against Trinity and M & L Express.

34. Plaintiff seeks from Defendants all damages allowed under federal law, including but

not limited to, freight, taxes, fees and insurance, in addition to the price paid to replace the generators and enclosures. As a result of Defendants' conduct, Collicutt has been damaged to its detriment in a sum according to proof at trial, in the amount of at least $675,900, the exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract as to Defendant Trinity)

35. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 34, above, as though fully set forth herein.

36. Plaintiff contends that Defendant Trinity was acting as a "motor carrier," as a "broker," or both, and pleads such theories in the alternative to the extent they are inconsistent under federal and state law.

37. Plaintiff and Defendant Trinity entered into two written contracts, in the form of PO Number 43009MS and PO Number 43168MS that required Trinity to ship the generators/enclosures and related equipment from Milwaukee, Wisconsin to the respective jobsites in California. Plaintiff performed all material acts required of it under the two written contracts. Trinity beached the express and/or implied terms of the written contracts by failing to take reasonable precautions when selecting trailers that would allow for proper clearance during transport, failing to select sub-contractors with due diligence, and failing to deliver the goods to California undamaged.

38. Consequently, Plaintiff seeks from Trinity all damages that flow from Trinity's breach of the two contracts, including but not limited to, freight, taxes, fees, and insurance, in addition to the price paid to replace the generators and enclosures. As a result of Trinity's conduct, Collicutt has been damaged to its detriment in a sum according to proof at trial, in the amount of at least $675,900, the exact amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Negligence as to Defendant Trinity)

39. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 38, above, as though fully set forth herein.

Complaint
1220401.8

40. Plaintiff contends that Defendant Trinity was acting as a "motor carrier," as a "broker," or both and pleads such theories in the alternative to the extent they are inconsistent under federal and state law.

41. Plaintiff and Defendant Trinity entered into two written contracts, in the form of PO Number 43009MS and PO Number 43168MS that required Trinity to ship the generators/enclosures and related equipment from Milwaukee, Wisconsin to the respective jobsites in California. Plaintiff performed all material acts required of it under the two written contracts. Trinity was negligent by failing to take reasonable precautions when selecting trailers that would allow for proper clearance during transport, failing to select sub-contractors with due diligence, and failing to deliver the goods to California undamaged.

42. Consequently, Plaintiff seeks from Trinity all damages that flow from Trinity's negligence, including but not limited to, freight, taxes, fees and insurance, in addition to the price paid to replace the generators and enclosures. As a result of Trinity's conduct, Collicutt has been damaged to its detriment in a sum according to proof at trial, in the amount of at least $675,900, the exact amount to be proven at trial.

## PRAYER FOR RELIEF

PLAINTIFF PRAYS FOR AN AWARD AS FOLLOWS:

1. For damages in an amount to be proved at trial;
2. For costs of suit herein incurred; and
3. All further relief which the Court deems just and proper.

Dated: February 23, 2022

BOUTIN JONES INC.
Attorneys at Law

By: */s/ Brian M. Taylor*
Brian M. Taylor
Daniel S. Stouder

Attorneys for Plaintiff Collicutt Energy, Inc.