UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLICUTT ENERGY SERVICES INC., <br><br> Plaintiff, <br><br> v. <br><br> TRINITY LOGISTICS, INC., et al., <br><br> Defendants. | No. 2:22-CV-00364-TLN-CKD <br><br><br> **ORDER** |

This matter is before the Court on Defendant, Cross-claimant, and Cross-defendant Trinity Logistics, Inc.'s ("Trinity") Motion for Summary Judgment. (ECF No. 37.) Plaintiff Collicutt Energy Services Inc. ("Collicutt") filed an opposition. (ECF No. 38.) Defendant, Cross-defendant, and Cross-claimant M&L Express LLC ("M&L") filed an opposition. (ECF No. 40.) Defendant and Cross-defendant Play Book Carriers Inc. ("Play Book") did not file an opposition. Trinity filed a reply. (ECF No. 41.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Trinity's Motion for Summary Judgment. (ECF No. 37.)

///

///

///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises out of contracts to transport freight that was subsequently damaged in transit. Collicutt is a corporation that distributes generators and other industrial equipment manufactured by other parties. (ECF No. 1 at ¶ 3; ECF No. 38-5 at 5.) Trinity is a corporation that transports or arranges for the transportation of freight.[2] (ECF No. 1 at ¶ 4; ECF No. 38-5 at 2.) M&L and Play Book are corporate entities that transport freight. (ECF No. 1 at ¶¶ 5–6.)

In May 2021, Collicutt contracted with Trinity to transport two generators and related equipment (collectively, "Subject Loads") from Wisconsin to California. (ECF No. 37-3 at 2; ECF No. 38-5 at 2.) Trinity thereafter contracted with Play Book and M&L to transport the Subject Loads.[3] (*Id.*) Play Book was responsible for transporting one generator and M&L was responsible for transporting the other. (ECF No. 1 at ¶¶ 16–17.) Collicutt provided Trinity with the dimensions for the Subject Loads, which Trinity then relayed to Play Book and M&L. (ECF No. 38-5 at 3.) Due to the size of the generators, the parties had to obtain authorization from the Department of Transportation to designate routes to transport the Subject Loads. (*Id.*) Unfortunately, the Subject Loads did not make it to their destination intact. (*Id.*)

At some point during transit, the drivers for Play Book and M&L each drove under an overpass that was too low for the height of the generator they were transporting. (ECF No. 1 at ¶ 21; ECF No. 38-5 at 3.) The generators hit the top of the overpasses and sustained severe damage. (ECF No. 1 at ¶ 21; ECF No. 38-5 at 3.) Collicutt subsequently purchased replacement generators and equipment and sought reimbursement from Trinity. (ECF No. 1 at ¶¶ 25, 28.) Trinity disclaimed liability and directed Collicutt to contact Play Book and M&L if it wanted

---

[1] The facts herein are undisputed unless otherwise indicated.

[2] The parties dispute whether Trinity is, or held itself out as, a motor carrier that transports freight. (*See, e.g.*, ECF No. 38-5 at 2.)

[3] The parties dispute whether Trinity informed Collicutt that it was outsourcing the transportation of the Subject Loads to Play Book and M&L. (ECF No. 38-5 at 2.) According to Collicutt, Trinity held itself out as a motor carrier and represented to Collicutt that it would transport the Subject Loads itself. (*Id.* at 3.)

1 reimbursement.  (*Id.* at ¶ 28.)

2 On February 24, 2022, Collicutt filed a Complaint against Trinity, M&L, and Play Book, alleging they were strictly liable for damages pursuant to 49 U.S.C. § 14706 et seq. (the "Carmack Amendment").  (ECF No. 1.)  In the alternative, Collicutt alleged Trinity breached its contract with it and was negligent in the performance thereof.  (*Id.*)

6 On April 15, 2022, Trinity answered Collicutt's Complaint and filed a Cross-complaint against M&L and Play Book, alleging M&L and Play Book: (1) breached their contracts with Trinity; (2) must indemnify Trinity for any liability; (3) were negligent in the performance of their contracts with Trinity; and (4) must pay a share of the damages in proportion to their culpability in the event Trinity is found liable for the damages sustained to the Subject Loads.  (ECF No. 6.)  A few days later, M&L answered Collicutt's Complaint and filed a Cross-complaint against Trinity, alleging Trinity: (1) breached its contract with M&L and must indemnify it; (2) was negligent in the performance of its contract with M&L; and (3) must pay a share of the damages in proportion to its culpability in the event M&L is found liable for the damages sustained to the Subject Loads.  (ECF No. 8.)

16 Play Book failed to answer Collicutt's Complaint and Trinity's Cross-complaint, and the Clerk of Court entered default against Play Book on June 16, 2022, and September 20, 2022, respectively.  (ECF Nos. 20, 22.)

19 On August 28, 2023, Trinity moved for summary judgment as to Collicutt's Complaint and M&L's Cross-complaint.  (ECF No. 37.)  Collicutt and M&L filed oppositions, and Trinity filed a reply.  (ECF Nos. 38, 40–41.)

///
///
///
///
///
///

3

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587.

### III. ANALYSIS

#### A. Trinity's Motion for Summary Judgment Against Collicutt

Trinity moves for summary judgment as to Collicutt's Complaint, arguing: (1) Trinity is a freight broker and therefore the Carmack Amendment does not apply; (2) there is no evidence Trinity was negligent in the performance of its contract with Collicutt; and (3) Trinity did not breach its contract with Collicutt. (ECF No. 37 at 15–23.) The Court addresses each argument in turn.

///

///

1.     The Carmack Amendment

The Carmack Amendment "makes carriers liable 'for the full actual loss, damage, or injury caused by' them to property they transport, and declares unlawful and void any contract, regulation, tariff, or other attempted means of limiting this liability." *Missouri Pac. R. Co. v. Elmore and Stahl*, 377 U.S. 134, 137 (1964). "It is well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property" and it "completely preempts a [state-law] contract claim alleging [the same]." *Hall v. N. Am. Van Lines, Inc*, 476 F.3d 683, 688 (9th Cir. 2007). By its terms, the Carmack Amendment applies to motor carriers and freight forwarders but not brokers.[4] *See* 49 U.S.C. § 14706; *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299–300 (11th Cir. 2018). Thus, if Trinity is a broker, the Carmack Amendment does not apply. *See Essex Ins. Co.*, 885 F.3d at 1299–300.

A motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2). "[T]he operative textual distinction between a broker and a motor carrier is whether a party *provides transportation* with regard to a given shipment, or whether it *sells, negotiates, or holds itself out* as providing transportation of that shipment." *Essex Ins. Co.*, 885 F.3d at 1300. However, "the line between 'providing' transportation and 'selling' transportation is a blurry one." *Id.* Many shipping companies "provide transportation via their own trucks and drivers for some shipments and serve as intermediaries that link shippers … with other carriers for other shipments, sometimes with regard to the same order." *Id.* To address situations such as this, the Department of Transportation distinguishes brokers from motor carriers as follows:

---

[4] Whether Trinity is a freight forwarder is not at issue in this case.

6

> Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

49 C.F.R. § 371.2(a). "[T]he key distinction is whether the disputed party accepted legal responsibility to transport the shipment." *Essex Ins. Co.*, 885 F.3d at 1301. The fact that an entity has a broker's license but not a motor carrier's license is not dispositive of the issue of liability. *Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09 CIV. 2365 PGG, 2011 WL 671747, at *4 (S.D.N.Y. Feb. 18, 2011). "A carrier's status as a common carrier is determined not by reference to its authority but rather by reference to what it holds itself out to be." *Ensco, Inc. v. Weicker Transfer and Storage Co.*, 689 F.2d 921, 925 (10th Cir. 1982); *see also Hewlett-Packard Co. v. Brother's Trucking Enterprises, Inc.*, 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005) ("Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper."). Thus, if Trinity held itself out as a motor carrier, it may still be held liable under the Carmack Amendment even though it did not physically transport the Subject Loads itself. *See, e.g.*, *Hewlett-Packard Co.*, 373 F. Supp. 2d at 1350–53; *Nipponkoa Ins. Co., Ltd.*, 2011 WL 671747, at *1, *8.

Trinity contends the Carmack Amendment does not apply because it "acted as a freight broker with respect to the Subject Loads." (ECF No. 37 at 17.) Specifically, Trinity argues it did not represent to Collicutt that it would carry the Subject Loads and there are no bills of lading or other documentary evidence identifying Trinity as the carrier. (*Id.* at 17–18.)

In opposition, Collicutt argues Trinity expressly identified itself as a motor carrier during communications with Collicutt's program manager and therefore the Carmack Amendment applies. (ECF No. 38 at 13–14.) Collicutt maintains that even if Trinity did not expressly identify itself as a motor carrier, it held itself out as one. (*Id.* at 14.) In support of its arguments,

7

1  Collicutt cites to a declaration from its project manager and the supporting documents submitted

2  therewith, including emails from Trinity that read, in pertinent part:

> I work almost exclusively in the energy sector, and *move generators* out of Kohler, Global Power, Cummins, and CAT … . *We move generator[s]* out of MTU to the west coast fairly regularly.  We are deeply rooted in the energy sector, *having been hauling for companies* like Kohler, Cummins, and CAT.  We are truly *experts in moving large/heavy haul freight*.  You will always know where your freight is, from the time *we pick up* to the time *we drop at the delivery site*.  I would welcome the opportunity to gain your trust by *hauling some loads* for you.  *I am the preferred carrier* for Bay City Electrics Works.[]  Let me know if you are open to having *me move a couple loads* for you both.

(ECF No. 38-3 at 12, 14) (emphasis added).

The Court finds there is a genuine dispute as to whether Trinity held itself out as a motor carrier.  As the moving party, Trinity carries the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Trinity argues there is no evidence suggesting it is a motor carrier or held itself out as one.  (*See* ECF No. 37 at 17; ECF No. 41 at 2–4.)  However, such contentions are belied by the record.  Several emails from Trinity suggest Trinity might have accepted legal responsibility to transport the Subject Loads itself, rather than some third party it was merely coordinating with.  (*See* ECF No. 38-3 at 12–48.)  Thus, a reasonable jury could find Trinity held itself out as a motor carrier subject to the strict liability provisions of the Carmack Amendment.  Moreover, the fact-intensive analysis of determining whether an entity is a broker or a motor carrier is not appropriate at the summary judgment stage.  *Essex Ins. Co.*, 885 F.3d at 1302; *Nipponkoa Ins. Co., Ltd.*, 2011 WL 671747, at *5 ("[I]t is apparent from the case law that the carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment.").

Accordingly, the Court DENIES Trinity's motion for summary judgment as to Collicutt's Carmack Amendment claim.

///

8

2.     Trinity's Contract with Collicutt

As discussed above, the Carmack Amendment is the exclusive cause of action for plaintiffs who raise interstate shipping contract claims against a motor carrier for lost or damaged property. In the event Trinity is found to be a broker, Collicutt alternatively alleges Trinity breached its contract with it and was negligent in the performance thereof. (ECF No. 1 at ¶¶ 35–42.) Trinity moves for summary judgment on both claims.

*a.     Negligence*

Under California law, "[a]ctionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 594 (1970). Whether a legal duty of care exists is a question of law for the Court. *Paz v. State of California*, 22 Cal. 4th 550, 557 (2000).

Trinity contends its legal duty to Collicutt was limited to arranging the transportation of the Subject Loads with reputable motor carriers. (*See* ECF No. 37 at 20–21.) Trinity maintains this legal duty was satisfied upon the hiring of Play Book and M&L and there is no evidence Trinity was negligent in hiring them. (*See id.* at 18–21.)

Collicutt disputes the scope of Trinity's legal duty and argues there are triable issues of fact regarding whether Trinity was negligent in failing to insure the Subject Loads and ensure their safe delivery. (ECF No. 38 at 16–18.)

The Court agrees with Trinity and finds Collicutt has failed to establish Trinity had a legal duty in tort to insure the Subject Loads and ensure their safe delivery. Courts have typically held that a broker's duty to a shipper is limited to exercising due care in selecting an appropriate carrier. *See New York Marine & Gen. Ins. Co. v. Estes Express Lines, Inc.*, No. 315CV02962CABJMA, 2016 WL 11778406, at *9 (S.D. Cal. Oct. 25, 2016), *aff'd*, 719 F. App'x 691 (9th Cir. 2018); *KLS Air Express, Inc. v. Cheetah Transp. LLC*, No. CIV. S05-2593 FCDDAD, 2007 WL 2428294, at *5 (E.D. Cal. Aug. 23, 2007); *Chubb Grp. of Ins. Companies v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1071 (C.D. Cal. 2002). Collicutt does not argue

Trinity did not exercise due care in selecting Play Book and M&L. Rather, Collicutt's negligence theory is premised upon Trinity's purported failure to keep its promises to insure the Subject Loads and ensure their safe delivery. (ECF No. 38 at 16–18.) Assuming these obligations exist, they arise under contract law, not tort. *See Chubb Grp. of Ins. Companies*, 243 F. Supp. 2d at 1072. However, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999). Collicutt has failed to establish Trinity had a duty independent of its alleged contractual obligations.

Accordingly, the Court GRANTS Trinity's motion for summary judgment as to Collicutt's negligence claim.

### b.   Breach of Contract

The essential elements of a valid contract include: (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object of the contract; and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550. To prevail on its breach of contract claim, Collicutt must demonstrate: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

"Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991). "The contractual understanding need not be express, but may be *implied in fact*, arising from the parties' conduct evidencing their actual mutual intent to create such enforceable limitations." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 336 (2000). "Where there is no express agreement, the issue is whether other evidence of the parties' conduct has a 'tendency in reason' to demonstrate the existence of an actual mutual understanding on particular terms … ." *Id.* at 337. "If such evidence logically permits conflicting inferences, a question of fact is presented. But where the undisputed facts negate the existence or the breach of the

contract claimed, summary judgment is proper." *Id.*

Trinity contends there is no evidence that it breached its contract with Collicutt. (ECF No. 37 at 21.) Specifically, Trinity argues it did not agree to carry the Subject Loads and could not have agreed to carry them because it is merely a broker "and does not own or operate equipment, including trucks, for the interstate transportation of cargo." (*Id.* at 22.)

In opposition, Collicutt maintains Trinity had a contractual obligation to ensure the Subject Loads "were actually delivered, intact, to the destination project site[s]" and to "fully insure the cargo during transit." (ECF No. 38 at 19–20.) In support of its contention, Collicutt cites to a declaration from its project manager and the supporting documents submitted therewith, including emails from Trinity that Collicutt contends demonstrate Trinity's agreement to insure the Subject Loads and ensure their safe delivery. (ECF No. 38-3 at 1–8, 16–25.) One such email from Trinity reads, "Setting up the insurance on these 2 units. What is the individual value of these generators?" (ECF No. 38-3 at 40.)

The Court finds the parties' evidence permits conflicting inferences regarding their understanding of the terms of their contract, and thus, a genuine dispute of a material fact exists. While the parties do not appear to have a written contract with express terms, it is undisputed that Collicutt contracted with Trinity to ship the Subject Loads from Wisconsin to California. (ECF No. 37-3 at 2; ECF No. 38-5 at 2.) It is also undisputed that the Subject Loads were damaged during transit. (ECF No. 37-3 at 3; ECF No. 38-5 at 3.) Collicutt has presented evidence that permits the inference that the parties had the mutual understanding that Trinity would insure the Subject Loads against damage and ensure they arrived, intact, at their destination — contrary to Trinity's contentions. (*See* ECF No. 38-3.) For example, Trinity's request to obtain the value of the Subject Loads to insure them is consistent with an alleged contractual term requiring Trinity to perform such action. (*See* ECF No. 38-3 at 40.) Thus, a genuine dispute as to a material fact exists, *Guz*, 24 Cal. 4th at 337, and summary judgment is not appropriate, *KLS Air Express, Inc.*, 2007 WL 2428294, at *6.

///

11

Accordingly, the Court DENIES Trinity's motion for summary judgment as to Collicutt's breach of contract claim.

B.     Trinity's Motion for Summary Judgment Against M&L

M&L filed a Cross-complaint against Trinity, alleging Trinity: (1) breached its contract with M&L and must indemnify it; (2) was negligent in the performance of its contract with M&L; and (3) must pay a share of the damages in proportion to its culpability in the event M&L is found liable for the damages sustained to the Subject Loads. (ECF No. 8.) Trinity moves for summary judgment as to M&L's first two crossclaims, arguing: (1) Trinity did not breach its contract with M&L; and (2) Trinity did not owe M&L a duty to confirm the dimensions. (ECF No. 37 at 23–24.) M&L filed an untimely opposition, and Trinity requests the Court construe it as a non-opposition to its motion for summary judgment. (ECF No. 41 at 8–9.)

Local Rule 230(c) requires any opposition to be filed and served no later than fourteen days after the motion was filed. Failure to timely file an opposition may be construed by the Court as a non-opposition to the motion. *Id.*

In the instant case, Trinity filed its motion for summary judgment on August 28, 2023 (ECF No. 37), but M&L filed its opposition on September 14, 2023 (ECF No. 40), making it three days late. Therefore, the Court GRANTS Trinity's request to construe M&L's untimely opposition as a non-opposition to its motion for summary judgment. L.R. 230(c). In any event, M&L's opposition only argues that Trinity was negligent. (ECF No. 40 at 4–5.) Thus, M&L has waived its breach of contract crossclaim. *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claim by not raising it in their opposition motion). Moreover, M&L's opposition advances arguments substantially similar to the arguments raised in Collicutt's opposition that the Court already rejected.

Accordingly, the Court GRANTS Trinity's motion for summary judgment as to M&L's breach of contract and negligence crossclaims.

///

///

12

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part Trinity's motion for summary judgment as to:

1. Collicutt's negligence claim;
2. M&L's breach of contract crossclaim; and
3. M&L's negligence crossclaim.  (ECF No. 37.)

The Court DENIES in part Trinity's motion for summary judgment as to all other claims. (*Id.*)  The parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing date of this Order, indicating their readiness to proceed to trial on the remaining claims and proposing trial dates.

IT IS SO ORDERED.

Date:  February 29, 2024

Troy L. Nunley
United States District Judge